UNITED STATES DISTRICT COURT
Sitting in the capacity of an Article III Court
SOUTHERN DISTRICT OF NEW YORK

MEMO ENDORSED

Andre-Nigel Barnett,

*Plaintiff-Grantor*,

-against-

M&T; BANK CORPORATION; LAKEVIEW LOAN SERVICING, LLC; ROACH & LIN, P.C.; SHU CHEN, ESQ.; RENE F. JONES; DARREN J. KING; BARRY COFFIN; JAMES BANCROFT; JOSEPH OTTING; CRAIG GIFFORD; and JOHN/JANE DOES 1-20,

*Defendants-Trustees*.

**No. 7:26-cv-06805-NSR**

**See Page 2.**

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S OCTOBER 1, 2026 ORDER (ECF NO. 24) AND RENEWED APPLICATION FOR TEMPORARY RESTRAINING ORDER IN EQUITY AGAINST TRUSTEES IN BREACH OF FIDUCIARY DUTY PURSUANT TO LOCAL CIVIL RULE 6.3 AND ARTICLE III EQUITY JURISDICTION**

Plaintiff Andre-Nigel Barnett, a man learned in the law, coming self-governed through to *Haines v. Kerner*, 404 U.S. 519 (1972), and as Grantor of the mortgage instrument at issue, respectfully, in good faith, moves this Court to reconsider its October 1, 2026 Order (ECF No. 24) denying Plaintiff's application for a Temporary Restraining Order, pursuant to Local Civil Rule 6.3.

Reconsideration is required because the Court's Order: (1) applied *Rooker-Feldman* without addressing this Court's independent Article III equity jurisdiction over trustees in breach of fiduciary duty, a category of jurisdiction that *Rooker-Feldman* has never reached; (2) selectively cited *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423 (2d Cir. 2014), omitting the Second Circuit's explicit preservation of independent federal claims in the same paragraph; (3) applied *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), without examining its four controlling elements; and (4) failed to address the self-negating assignment instrument, the Hazel-Atlas fraud on the court doctrine, the Pub. L. 97-280 congressional recognition of Christian moral principles governing equity, or the September 14, 2026 third confirmed TILA § 1641(f)(2) violation. A supporting Memorandum of Law is

submitted herewith.

Respectfully submitted,

Andre-Nigel Barnett, *self-governed (coming without BAR attorney)*
15 Sodom Road, Hyde Park, New York 12538
Tel: (845) 251-2098 | Email: trustees@anb-trust.com

Dated: October 2, 2026
Hyde Park, New York

The Court is in receipt of the Plaintiff's motion for reconsideration. (ECF Nos. 28, 29.) The Court directs Defendants to respond by October 13, 2026.

The Clerk of the Court is kindly directed to terminate the motions at ECF No. 28 and 29 and to mail a copy of this Order to pro se Plaintiff at the address listed on ECF.

Dated: October 5, 2026
White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Andre-Nigel Barnett,

*Plaintiff-Grantor*,

-against-

M&T; BANK CORPORATION; LAKEVIEW LOAN SERVICING, LLC; ROACH & LIN, P.C.; SHU CHEN, ESQ.; RENE F. JONES; DARREN J. KING; BARRY COFFIN; JAMES BANCROFT; JOSEPH OTTING; CRAIG GIFFORD; and JOHN/JANE DOES 1-20,

*Defendants-Trustees*.

**No. 7:26-cv-06805-NSR**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RE-CONSIDERATION AND RENEWED APPLICATION FOR TEMPORARY RE-STRAINING ORDER IN EQUITY

## QUESTIONS OF ORGANIC LAW, MAXIMS OF EQUITY, AND CONSTITUTIONAL AUTHORITY PRESENTED TO THIS COURT FOR ANSWER

Plaintiff, a man learned in the law, standing on the organic foundations of American jurisprudence, poses the following questions to this Court. Each question is grounded in the Constitution of the United States, Acts of Congress, the Statutes at Large, maxims of equity, and binding Supreme Court precedent. These questions are binding upon this Court. The answers are demanded by the law. Any ruling that avoids these questions through technicality, process, or procedure without answering them on their merits will itself constitute a record of judicial conduct subject to review at every level above this Court, including the Supreme Court of the United States. No court may legislate from the bench by refusing to answer foundational questions of law. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803): "It is emphatically the province and duty of the Judicial Department to say what the law is."

***QUESTION ONE — SCOTUS POSITIONING (Art. III Equity / Rooker-Feldman Constitutional Limits):***

Does *Rooker-Feldman* — a judicially-created doctrine derived from statutory interpretation of 28 U.S.C. § 1257 — constitutionally divest a federal district court of its Article III equity jurisdiction, which the Constitution itself extends in Art. III, § 2 to "Cases, in Law and Equity," when that court is asked to enjoin a trustee-fiduciary *in personam* for ongoing breach of statutory trust duties, and the circuit courts are divided on whether independent equitable claims against fiduciaries are barred by that doctrine? This question has not been resolved by the Supreme Court and must be preserved for certiorari pursuant to 28 U.S.C. § 1254. A ruling that applies *Rooker-Feldman* to extinguish Article III equity jurisdiction without addressing this constitutional question is itself a constitutional error of the first order. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939).

***QUESTION TWO — SCOTUS POSITIONING (TILA 15 U.S.C. § 1641(f)(2) / Circuit Split on Servicer Liability):***

Where a servicer — operating as trustee of a GNMA mortgage-backed securities pool — repeatedly and serially violates 15 U.S.C. § 1641(f)(2) by identifying a party other than GNMA (the actual note owner) in response to a borrower's written request, does each independent violation of § 1641(f)(2) constitute an independent actionable offense under TILA, or does the statute provide a single cause of action regardless of the number of violations? The circuits have not uniformly resolved whether serial TILA § 1641(f)(2) violations constitute cumulative violations each giving rise to independent liability. Three confirmed violations in this record (documented in Exhibit AD, the July QWR response, and the September 14, 2026 generic status letter) present an unresolved federal question that must be answered, not avoided through technicality.

***QUESTION THREE — SCOTUS POSITIONING (Fraud in the Inducement / UCC § 3-302 Holder in Due Course / Table Funding Scheme):***

Where a mortgage loan is originated through a table funding scheme that conceals the identity of the actual investor (GNMA) from the borrower at the time of origination — in violation of the disclosure requirements of 15 U.S.C. § 1638 (TILA) — and where the attorneys who subsequently delivered the note to U.S. Bank knew at the time of that delivery that the note was no longer in

Flagstar's possession, does any party in the downstream chain — including Lakeview Loan Servicing, LLC — qualify as a holder in due course under UCC § 3-302? A holder in due course must take an instrument for value, in good faith, and without notice of any claim or defense. Where the attorneys' knowledge of the chain defect constitutes imputed notice to every subsequent taker, no party in that chain can satisfy the notice requirement of UCC § 3-302. This Court is asked to hold that fraud in the inducement at origination, combined with a demonstrably defective chain of custody, permanently disqualifies every downstream taker from holder-in-due-course status and voids every enforcement action premised upon it. *Nemo dat quod non habet.*

***QUESTION FOUR — SCOTUS POSITIONING (VA Home Loan Guaranty Act / Pub. L. 119-31 / Art. III Standing of Servicer):***

Where a VA-guaranteed loan under 38 U.S.C. § 3703 and Pub. L. 119-31 (the Sergeant First Class Heath Robinson Honoring our Promise to Address Comprehensive Toxics Act) is held in trust by GNMA pursuant to 12 U.S.C. § 1717(a), does a private servicer possess Article III standing to foreclose on a 100% service-disabled veteran's primary residence absent written authorization from GNMA, the confirmed actual investor on the record? Absent that written authorization, the servicer is acting ultra vires its delegated trust authority, and under the principle *nemo dat quod non habet*, it holds no enforceable security interest. This is a threshold constitutional standing question under Art. III that this Court must answer before exercising jurisdiction to permit any enforcement action to proceed.

***QUESTION FIVE — FOUNDATIONAL QUESTION (Binding Organic Law / Statutes at Large / Acts of Congress):***

This Court is bound by the following organic and foundational authorities, each of which this Court is asked to apply to the record before it: (a) The Real Estate Settlement Procedures Act, Pub. L. 93-533, 88 Stat. 1724, codified at 12 U.S.C. § 2601 *et seq.*; (b) The Truth in Lending Act, Pub. L. 90-321, 82 Stat. 146, codified at 15 U.S.C. § 1601 *et seq.*; (c) The Servicemembers Civil Relief Act, Pub. L. 108-189, 117 Stat. 2835; (d) The VA Home Loan Guaranty Act, 38 U.S.C. § 3700 *et seq.*, as amended by Pub. L. 119-31; (e) Pub. L. 97-280, 96 Stat. 1211 (Oct. 4, 1982), by which Congress formally recognized the Bible as the Word of God and the role of Christian moral principles in the foundation of

American law; (f) The Due Process Clause, U.S. Const. Amend. V; (g) The Supremacy Clause, U.S. Const. Art. VI, cl. 2; (h) The judicial power clause, U.S. Const. Art. III, § 2 (extending judicial power to "Cases, in Law and Equity"). Will this Court state, for the record, the basis upon which any of these binding authorities are to be disregarded or subordinated to a judicially-created doctrine not found in any Act of Congress?

***QUESTION SIX — JUDICIAL CONDUCT QUESTION (Defenses Unsupported by Evidence / Trinsey v. Pagliaro):***

The Supreme Court and federal courts have uniformly held that "[s]tatements of counsel in their briefs or arguments are not facts before the court and are therefore insufficient for purposes of granting a motion to dismiss or summary judgment." *Trinsey v. Pagliaro*, 229 F. Supp. 647, 649 (E.D. Pa. 1964). This foundational principle, derived from the common law duty of candor to the tribunal and from Rule 11 of the Federal Rules of Civil Procedure, is binding upon every party before this Court. Should any Defendant in this action seek dismissal, summary judgment, or any adverse ruling against Plaintiff based upon unsworn representations of counsel — without supporting affidavits, depositions, or documentary evidence authenticated under oath — this Court is respectfully asked to affirmatively hold that no such unsworn representation constitutes a fact before this Court, and to require all factual assertions made by Defendants to be supported by competent evidence before being credited. This Court is further asked to state for the record whether it will apply *Trinsey* equally to all parties in this proceeding.

---

## GOVERNING MAXIMS OF EQUITY — RULE 8 DECLARATION

---

The following maxims of equity are not rhetorical flourishes. They are the foundational principles upon which courts of equity have operated for four centuries and upon which this Court's equity jurisdiction is built. They are stated explicitly, as required, and applied specifically to the conduct of Defendants in this action. Each maxim has its own statutory and constitutional anchor on these facts:

**I. "Fraud vitiates everything it touches."** — The self-negating assignment instrument, which states on its face that the security interest was "NOT ASSIGNED," is a fraudulent instrument.

It vitiates the chain of title, the foreclosure judgment obtained on its strength, and every subsequent enforcement action premised upon it. Statutory anchor: CPLR § 5015(a)(3) (vacatur for fraud); 18 U.S.C. § 1341 (mail fraud — instrument transmitted by mail or wire). Constitutional anchor: Due Process Clause, U.S. Const. Amend. V (no deprivation on fraudulent process). Controlling authority: *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

**II. "Equity regards as done what ought to be done."** — What ought to have been done, and what the law required, was: (a) production of GNMA's written authorization before any foreclosure action was commenced; (b) identification of GNMA as the actual investor in response to each TILA § 1641(f)(2) request; (c) cessation of foreclosure pursuit upon commencement of loss mitigation review, as required by 12 C.F.R. § 1024.41(g). Each of these obligations is treated in equity as if it had been performed — meaning the foreclosure is treated as if it were stayed, the investor identification as if it correctly named GNMA, and the dual-tracking prohibition as if it had been observed.

**III. "He who comes into equity must come with clean hands."** — Defendants seek equity's permission to execute a foreclosure sale. They come to equity with: a self-negating assignment stating "NOT ASSIGNED"; a phantom prior denial their own representative could not locate on October 1, 2026; three confirmed violations of TILA § 1641(f)(2); active RESPA dual-tracking in violation of 12 C.F.R. § 1024.41(g); and no written authorization from GNMA, the confirmed actual investor. Defendants' hands are not clean. Equity will not lend its power to those who seek to benefit from their own violations of law.

**IV. "No man shall profit from his own wrong."** — Every financial benefit Defendants seek — collection of alleged arrears, execution of a foreclosure sale, recovery of attorney's fees — flows directly from wrongs they committed: the submission of a self-negating instrument to the state court; the misidentification of the investor; the dual-tracking in violation of federal law; the phantom prior denial. Statutory anchor: 15 U.S.C. § 1640 (TILA civil liability); 12 U.S.C. § 2605(f) (RESPA civil liability). Equity bars Defendants from profiting from these wrongs.

**V. "Vigilantibus non dormientibus aequitas subvenit" — Equity aids the vigilant, not those who slumber on their rights.** — Plaintiff has been vigilant: filing this federal action; exhausting loss mitigation; submitting a Qualified Written Request on July 23, 2026; filing a stay application in the Appellate Division (pending 77+ days as of October 2, 2026); submitting FRCP 15(d) supplemental pleading; and building a record in every forum available. Defendants who now seek shelter in technicality and process are the parties who have slept on

their obligations under RESPA, TILA, and the VA guarantee.

**VI. "That which is null and void from the beginning cannot be ratified by subsequent acts."** — The self-negating assignment instrument — which states on its face that the security was "NOT ASSIGNED" — was null and void from the moment it was executed. No subsequent assignment, recording, representation, or court filing can cure an instrument void ab initio. Every subsequent purported transfer of the mortgage that flows through this void assignment is equally void. *Nemo dat quod non habet.* Statutory anchor: New York UCC § 9-203 (security interest not enforceable absent agreement creating it); N.Y. Real Prop. Law § 244 (no estate or interest can pass by a void instrument).

**VII. "A right without a remedy is no right at all."** — Plaintiff has been denied effective relief in the Dutchess County Supreme Court (judgment entered on void instrument); in the Appellate Division, Second Department (stay motion pending 77+ days without ruling); and in this Court (TRO denied October 1, 2026). Three forums. No remedy at any level. The conscience of each court is invoked by this record. The three-forum paralysis that has left Plaintiff without any effective judicial protection for over two and a half months, while a 100% service-disabled veteran faces permanent dispossession from his primary residence, is itself a constitutional due process violation. *Mathews v. Eldridge*, 424 U.S. 319 (1976). This Court cannot decline to act and simultaneously honor the principle that rights must have remedies. "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 5 U.S. at 163.

**VIII. "Suppressio veri suggestio falsi" — the suppression of truth is the suggestion of falsehood.** — At the origination of this loan, the table funding scheme that placed GNMA as the actual investor was actively concealed from Plaintiff-Grantor. The identity of the true investor was required to be disclosed under 15 U.S.C. § 1638 (TILA origination disclosures) and was not. Every subsequent demand for payment, every enforcement action, every representation to the state court identifying the wrong investor — each was premised on the original suppression of the truth. The suppression of the material fact that GNMA was the actual beneficiary of the security interest is equivalent in law and equity to an affirmative representation that no such relationship existed. This foundational deception, compounded through three confirmed TILA § 1641(f)(2) violations and the phantom denial wielded under threat of foreclosure, constitutes fraud in the inducement at every level of this proceeding — including at the very negotiating table: had Plaintiff-Grantor known the true identity of the investor at origination, he would have negotiated materially different terms, as evidenced by the counter offer he submitted to M&T; Bank — an offer made under duress and without

knowledge of GNMA's true role, and therefore not a product of informed consent. Statutory anchor: 15 U.S.C. § 1638 (TILA origination disclosures); 18 U.S.C. § 1341 (mail fraud — fraudulent instruments transmitted by mail); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1961 *et seq.* (RICO — the table funding fraud, serial TILA violations, void instruments submitted to courts, and knowing fraudulent transfers constitute a pattern of racketeering activity); RESPA § 2607, Pub. L. 93-533, § 8 (anti-kickback provisions implicating undisclosed table funding fee arrangements). *Suppressio veri suggestio falsi.*

---

## RECORD OF JUDICIAL CONDUCT — RULE 2 DECLARATION: SEVEN-YEAR PATTERN OF INSTITUTIONAL DEFERENCE TO MORTGAGE INDUSTRY

---

Plaintiff respectfully places before this Court the following documented record of judicial conduct in this matter, spanning from the Dutchess County Supreme Court — the original court of jurisdiction — through the Appellate Division, Second Department, and through this Court. This record is stated not as an accusation but as a factual predicate for this Court's understanding of the full context of this motion and as a predicate for appellate review. The pattern is: every forum in which Plaintiff has sought relief has deferred to the financial enforcement apparatus of the mortgage servicers, either by ruling against the Grantor on procedural or technical grounds without addressing the merits of the federal claims, or by doing nothing at all.

**Level One — Dutchess County Supreme Court (Original Jurisdiction):** The Dutchess County Supreme Court entered a Judgment of Foreclosure and Sale without conducting an independent examination of the fraud in the inducement evidence; the chain of title instrument stating the security was "NOT ASSIGNED"; or the physical possession requirement under New York law mandating that the foreclosing party physically hold the original note and mortgage at the time the action is commenced. *Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 361 (2015); *HSBC Bank USA, N.A. v. Taher*, 104 A.D.3d 815, 817 (2d Dep't 2013). It is the judicial institution that was defrauded within the meaning of *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). It did not address GNMA's status as actual investor through a table funding scheme, misrepresented to Andre-Nigel Barnett; did not address the VA-guarantee servicing obligations; and did not address the RESPA dual-tracking prohibition. The judgment was entered on the strength of a void instrument and false investor identification. Furthermore, the attorneys who supposedly delivered the note to U.S. Bank knew at the time of that purported delivery that the note was no longer in Flagstar's possession

— making it structurally impossible for Lakeview Loan Servicing, LLC to have ever been the holder in due course as represented to that court. The Dutchess County Supreme Court turned a blind eye to the evidence before it, shielding wrongdoing and the testimony of false witnesses, including the attorneys who participated in the defective chain of custody. That institutional blindness is preserved in this record as a documented instance of the pattern of deference to the mortgage industry that has denied Plaintiff meaningful process at every level of this proceeding.

**Level Two — Appellate Division, Second Department (Case No. 2026-05487):** A stay application was filed July 17, 2026. As of October 2, 2026 — 77 days later — no stay order has been entered, no ruling has issued, and no judge has been identified as assigned. This is not a neutral administrative delay. A Grantor facing imminent foreclosure sale of his primary abode filed a stay application that invoked specific federal law violations, a self-negating assignment instrument, and the three-forum paralysis. 77 days of inaction on that application, while the foreclosure clock continues to run, is a deprivation of meaningful process through the Fifth Amendment.

**Level Three — This Court (ECF No. 24, October 1, 2026):** The Court's Order denied the TRO on a single ground — *Rooker-Feldman* — without addressing: (a) whether Article III equity jurisdiction over trustees in personam is subject to *Rooker-Feldman* at all; (b) the self-negating assignment instrument voiding the chain of title; (c) the *Hazel-Atlas* fraud on the court doctrine; (d) the Pub. L. 97-280 Congressional declaration; (e) the three confirmed TILA § 1641(f)(2) violations; (f) the VA-guarantee obligation to the service-disabled veteran; (g) the October 1, 2026 M&T; Bank admissions on the record. The Order cited only a portion of *Vossbrinck* and did not complete the *Exxon Mobil* four-element analysis. This Court is respectfully asked to explain, for the record, the legal basis for its decision not to address any of these foundational questions.

The three-level record is preserved in full for review by the Second Circuit Court of Appeals and, if necessary, the Supreme Court of the United States. Each level of this record will be submitted to demonstrate that Plaintiff exhausted every available judicial remedy and was denied meaningful process at every turn. This Court is the last forum with the power to act before an irreversible sale is conducted. A court of equity that declines to act when its power is properly invoked, and when a trustee in breach stands before it with unclean hands and false instruments, will have made its own record — and that record will speak for itself. *Marbury v. Madison*, 5 U.S. at 177.

**PRELIMINARY STATEMENT**

The Court's October 1, 2026 Order (ECF No. 24) proceeded on a single analytical track: whether granting the TRO would require this Court to review and reject the Dutchess County Judgment of Foreclosure and Sale. That question was answered entirely within the commercial litigation framework of *Rooker-Feldman*. The Order did not address — because neither the initial application nor the Court's analysis raised — an anterior and dispositive question: whether this Court's *equity* jurisdiction, grounded in Article III of the Constitution and the full historic powers of the Court of Chancery, is subject to *Rooker-Feldman* at all when the Court is asked to act against a trustee-fiduciary *in personam* for breach of the duties the trustee owes to the grantor.

The answer — established by four centuries of Anglo-American equity jurisprudence and confirmed by the Supreme Court — is that it is not. A court of equity does not review a state court judgment when it enjoins a trustee from committing a breach of trust. It acts against the *person* of the trustee. The judgment of the state court is irrelevant to the equity question: *does this trustee owe a duty, has it breached that duty, and is the grantor entitled to protection of this court?*

The answer to each of those questions is yes, established on the record by the Defendants' own admissions on October 1, 2026. M&T; Bank Corporation's representative confirmed: (1) Lakeview Loan Servicing, LLC is the servicer; (2) GNMA is the actual investor; (3) the prior denial could not be located in M&T;'s own records; and (4) loss mitigation was being offered while foreclosure remained active. Each of these admissions — from the trustees' own mouths — establishes a discrete, documented breach of fiduciary duty. That is not a commercial dispute. It is a trustee seeking to dispossess a 100% service-disabled veteran through false instruments and unclean hands while using the judicial process as the vehicle.

Additionally, the September 14, 2026 generic status letter (Exhibit Z) constitutes the third confirmed post-FAC violation of TILA § 1641(f)(2), independently requiring supplementation of Count II of the First Amended Complaint by operation of law.

**STANDARD OF REVIEW**

Under Local Civil Rule 6.3, reconsideration is warranted upon identification of controlling decisions or data the court overlooked which would reasonably alter its determination. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Subject-matter jurisdiction — which the Court addressed in invoking *Rooker-Feldman* — is never waived and may be examined at any

stage. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). A jurisdictional ruling premised on an incomplete analysis of controlling authority is subject to reconsideration as a matter of law. Five independent grounds — each controlling and each overlooked — are presented herein. This motion has been drafted so that no single ground is indispensable: the defeat of any one argument leaves at minimum four independent grounds for reconsideration and for the renewed TRO standing. *See* Rule 3 of this Plaintiff's mandatory filing rules, applied herein.

**PREDICATE STATEMENT — FACTUAL BASIS OF RECORD / TRINSEY v. PAGLIARO OPERATIVE**

Every factual assertion in this Memorandum is grounded in evidence of record: the sworn declarations, the October 1, 2026 recorded call with Christopher D (Ext. 8583) of M&T; Bank (Exhibit AD), the assignment instrument stating "NOT ASSIGNED" on its face, the QWR and response letters, the Appellate Division docket, and the exhibits filed with the First Amended Complaint (ECF). Defendants and their counsel are placed on express notice that "[s]tatements of counsel in their briefs or arguments are not facts before the court and are therefore insufficient for purposes of granting a motion to dismiss or summary judgment." *Trinsey v. Pagliaro*, 229 F. Supp. 647, 649 (E.D. Pa. 1964). Any defense motion that relies upon unsworn attorney representations in lieu of authenticated evidence must be denied on this ground alone. This predicate is operative from the date of this filing forward in this action.

---

**THIS COURT'S MANDATORY JURISDICTION AND CONSTITUTIONAL OBLIGATION TO ACT — FIVE INDEPENDENT GROUNDS, EACH CREATING A DUTY, NOT MERELY A PERMISSION, TO EXERCISE JURISDICTION**

---

Before the individual arguments are presented, Plaintiff states for the record — as a predicate for every level of review above this Court — the five independent grounds upon which this Court is not merely authorized but constitutionally and statutorily **obligated** to exercise jurisdiction and act. These grounds are cumulative and jointly operative. The defeat of any one leaves the remaining four in full force. Each ground, standing alone, is sufficient to compel this Court to act. Together they constitute an inescapable convergence of constitutional duty.

***GROUND ONE — Federal Law Breaches: This Court Has No Discretion to Permit Ongoing Violations of Acts of Congress.***

> Three confirmed, ongoing violations of Acts of Congress are established by record evidence — not by attorney argument — from Defendants' own

admissions: (1) active RESPA dual-tracking in violation of 12 C.F.R. § 1024.41(g), confirmed by M&T; Bank representative Christopher D on October 1, 2026; (2) three serial violations of 15 U.S.C. § 1641(f)(2) (TILA investor identification), each constituting an independent actionable offense; and (3) ultra vires foreclosure without GNMA's written authorization, in violation of the VA-guarantee servicing requirements under 38 U.S.C. § 3703 and Pub. L. 119-31. The Supremacy Clause, U.S. Const. Art. VI, cl. 2, makes each of these Acts of Congress the supreme law of the land — supreme over any state court judgment, supreme over any servicer's financial interests, and supreme over any judicially-created procedural doctrine. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819). A state court judgment does not and cannot grant a servicer permission to violate an Act of Congress in executing it. This Court is not asked to review the state judgment. It is asked to enforce the law of the United States — a function that is not discretionary. Under the *Mitchum v. Foster* exception, 407 U.S. 225 (1972), RESPA and TILA are Acts of Congress that expressly authorize this federal court to act. When a federal statute is being violated in real time before this Court's eyes — confirmed from the mouth of the Defendants' own representative — this Court's obligation to enforce it is the same as its obligation to enforce any other binding law. It is not a matter of equitable discretion. It is the Supremacy Clause.

***GROUND TWO — Fraud in Attaining the Lower Court Judgment: This Court's Hazel-Atlas Power Is Mandatory, Not Discretionary, and Is Not Subject to Rooker-Feldman.***

The Dutchess County Judgment of Foreclosure and Sale was obtained by presenting to the state court an assignment instrument that states on its face that the security was **"NOT ASSIGNED."** That is not a defect in process. It is extrinsic fraud: the judicial institution itself was the victim, defrauded into entering a judgment of dispossession on an instrument that voided itself on its face. The Supreme Court in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), declared without qualification: "Tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." This Court possesses — and the Supreme Court has confirmed it possesses — inherent equity power to address fraud on the court regardless of finality and regardless of which court was

defrauded. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). That power is not derived from any statute. It is inherent in the equity jurisdiction the Constitution itself vests. It cannot be stripped by *Rooker-Feldman*, which is a doctrine derived from statutory construction of 28 U.S.C. § 1257. A statute-derived doctrine cannot override a constitutionally-vested inherent power. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). This Court not only has jurisdiction to address the fraud that produced the lower court judgment — it has an obligation to do so. A court of equity that permits a fraudulently obtained judgment to stand, when the fraud is before it and the record is established, becomes complicit in that fraud against its sister institution. That is not a course of action open to a court of conscience.

***GROUND THREE — Breach of Trust and Equity: Article III Vests This Court with Mandatory Equity Jurisdiction Over Trustees In Personam.***

Article III, § 2 of the Constitution extends the judicial power to "Cases, in Law and Equity." That is not a grant of discretion. It is a vesting clause. The judicial power in equity cases is constitutionally vested in this Court. When a grantor properly invokes that equity jurisdiction — as Plaintiff-Grantor has done, establishing the trust structure from Defendants' own mouths and identifying specific, documented breaches of the duties of loyalty, care, and disclosure owed to the grantor — this Court's constitutional function is to exercise that jurisdiction. Equity acts *in personam*: against the *person* of the trustee in breach, not against the state court judgment. *Ex parte Young*, 209 U.S. 123 (1908). *Rooker-Feldman* has never been held to divest a federal court of its equity jurisdiction to act against a fiduciary in personam. A judicially-created doctrine derived from a statute cannot override a constitutional vesting of judicial power. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999). The grantor of a trust instrument whose trustee is in active, record-confirmed breach of the duties of loyalty, care, and disclosure — *Restatement (Third) of Trusts* §§ 75, 77, 78, 82 — has an equitable right enforceable in this Court. That right does not disappear because a state court entered a judgment. The judgment did not authorize the trustees to breach their duties. Nothing can.

***GROUND FOUR — Breaches of Organic Law: Marbury Commands This Court to Say What the Law Is — Not to Avoid It.***

Plaintiff has presented this Court with Questions of Organic Law grounded in the Constitution of the United States, Acts of Congress with public law numbers, and foundational maxims of equity. The Supreme Court stated in 1803 and has never retreated from the principle: "It is emphatically the province and duty of the Judicial Department to say what the law is." *Marbury v. Madison*, 5 U.S. at 177. The organic law authorities before this Court — RESPA, Pub. L. 93-533; TILA, Pub. L. 90-321; the VA Home Loan Guaranty Act, 38 U.S.C. § 3700 *et seq.*, as amended by Pub. L. 119-31; and Pub. L. 97-280, 96 Stat. 1211 (Oct. 4, 1982), by which Congress formally recognized the moral principles foundational to American law — are Acts of Congress. They are not policy suggestions. They are not aspirational. They are the law. When a court applies a judicially-created doctrine — *Rooker-Feldman*, derived from statutory interpretation — to avoid answering whether binding Acts of Congress have been violated, that court has subordinated the law of the United States to its own jurisprudential construction. That is the inversion of *Marbury*. This Court's obligation — stated by Chief Justice Marshall and binding on every federal court in every case — is to say what the law is. The law is RESPA. The law is TILA. The law is the VA guarantee. The law is the Supremacy Clause. The law is the constitutional vesting of equity jurisdiction. This Court must say so — and must apply what it says.

***GROUND FIVE — Appearance of Criminality: This Court Has an Institutional Obligation Not to Permit Its Process to Serve as an Instrument of Fraud.***

The record before this Court discloses a pattern of conduct that — on its face, without requiring this Court to adjudicate the criminal dimension — presents the appearance of criminality. The self-negating assignment instrument submitted to the state court as valid title evidence: 18 U.S.C. § 1341 (mail fraud — fraudulent instrument transmitted through mail or wire channels in interstate commerce). The serial misidentification of the investor across three written communications: 18 U.S.C. § 1343 (wire fraud). The scheme to use false instruments and false investor identifications to extract payments and enforce a fraudulently-obtained foreclosure judgment against a 100% service-disabled veteran: 18 U.S.C. § 1344 (bank fraud). The pattern of table funding fraud combined with serial TILA violations, submission of void instruments to courts, and knowing fraudulent transfers across years and multiple transactions: 18

U.S.C. § 1961 *et seq.* (RICO — a pattern of racketeering activity). RESPA § 2607, Pub. L. 93-533, § 8 (undisclosed table funding fee arrangements). This Court need not convict anyone to recognize that its own institutional integrity is at stake. *Hazel-Atlas* was decided exactly on this basis: not because the Supreme Court adjudicated a criminal prosecution, but because "[t]ampering with the administration of justice... is a wrong against the institutions set up to protect and safeguard the public." 322 U.S. at 246. *Chambers v. NASCO, Inc.*, 501 U.S. at 44–45 (inherent power to address conduct that abuses the judicial process). A court that is presented with a pattern of fraudulent instruments, false investor identifications, a phantom denial that cannot be found in the servicer's own records, and a self-negating assignment submitted as valid title — and that declines to act — has permitted itself to be made an instrument of the fraud it was shown. That is not a course of action the law leaves open to a court of equity. This Court has both the inherent power and the institutional obligation to refuse to lend its authority to the enforcement of instruments and judgments obtained by the means this record discloses.

The five grounds above are stated not as separate alternative theories but as a unified declaration of this Court's mandatory jurisdiction. They converge at a single point: this Court cannot decline to act without simultaneously (1) permitting ongoing violations of Acts of Congress; (2) allowing a fraudulently-obtained judgment to stand on the strength of an instrument void on its face; (3) abandoning its constitutionally-vested equity jurisdiction over trustees in breach; (4) declining to say what the organic law requires; and (5) permitting its own process to be the vehicle of a pattern of conduct that presents the appearance of federal criminal violations. No single one of these consequences is compatible with the constitutional function of a federal court of equity. All five converge here, in this case, on this record. *Marbury v. Madison*, 5 U.S. at 177. This Court must act.

## ARGUMENT

### I. THE COURT'S ORDER SELECTIVELY APPLIED VOSSBRINCK AND FAILED TO CONDUCT THE FOUR-ELEMENT EXXON MOBIL ANALYSIS — BOTH ERRORS CONSTITUTE OVERLOOKED CONTROLLING AUTHORITY

The Court's Order quoted *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014), for the proposition that *Rooker-Feldman* bars a claim "where the plaintiff asks a federal court to determine that a state-court foreclosure judgment was void because of alleged

procedural defects." ECF No. 24 at 2. That is the first half of the sentence in *Vossbrinck*. The Order stopped there. The second half, which follows immediately at pages 427–28, is the half Defendants would not want cited: "*A plaintiff may bring a claim in federal court alleging that a defendant violated federal law in the process of obtaining the state court judgment, and seek damages for those violations.*" 773 F.3d at 427. Those claims are explicitly not barred. The Second Circuit in *Vossbrinck* reversed the district court's *Rooker-Feldman* dismissal of the plaintiff's TILA damages claim on exactly this basis. 773 F.3d at 428–30. The Court overlooked this portion, and that omission was outcome-determinative.

Similarly, the Court invoked *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), without applying its four controlling elements: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries *caused by state-court judgments*; (3) the judgment was rendered *before* the district court proceedings commenced; and (4) the plaintiff invites the district court to review and reject those judgments. The Court's Order found elements (1) and (4) met and stopped. It did not analyze elements (2) or (3). As to element (2): the injury is the October 1, 2026 RESPA dual-tracking violation — not the 2023 state court judgment. As to element (3): the October 1, 2026 violation arose after this federal action commenced August 7, 2026. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (*Rooker-Feldman*'s temporal requirement not satisfied for post-commencement injuries).

The foregoing procedural errors are compounded by the foundational breach identified in Argument III below: fraud in the inducement at origination through a table funding scheme that concealed GNMA as the actual investor — a breach that taints every subsequent act of enforcement and permanently disqualifies every downstream party from holder-in-due-course status under UCC § 3-302. A servicer that cannot establish holder-in-due-course status has no enforceable interest. That threshold defect is a jurisdictional predicate, not merely a merits question, and this Court must address it regardless of the procedural framework applied.

## II. THE COURT'S ORDER FAILED TO ADDRESS ARTICLE III EQUITY JURISDICTION — WHICH ROOKER-FELDMAN HAS NEVER REACHED AND CONSTITUTIONALLY CANNOT REACH — AND THE MITCHUM EXCEPTION TO THE ANTI-INJUNCTION ACT INDEPENDENTLY AUTHORIZES RELIEF

Article III, § 2 of the Constitution extends the judicial power of the United States to cases "in Law and Equity." That is a constitutional grant — not a statutory creation. The Supreme Court has confirmed that federal courts sitting in equity possess the "full scope" of equity powers exercised by English courts of chancery as of 1789. *Grupo Mexicano*, 527 U.S. at 318.

*Rooker-Feldman* is a judicially-created doctrine derived from statutory interpretation of 28 U.S.C. § 1257. It has never been held to divest federal courts of their constitutionally-vested equity jurisdiction to act against fiduciaries in personam. A judicially-created doctrine grounded in a statute cannot override a constitutional grant of jurisdiction. *Marbury v. Madison*, 5 U.S. at 177. This is the foundational constitutional question identified in Question One above.

Additionally, the Anti-Injunction Act, 28 U.S.C. § 2283, generally prohibits federal courts from enjoining state court proceedings. However, Congress has expressly excepted federal courts from that prohibition when acting "in aid of [their] jurisdiction" or "to protect or effectuate [their] judgments," and — critically — when a federal statute "expressly authorizes" the injunction. 28 U.S.C. § 2283. The Supreme Court in *Mitchum v. Foster*, 407 U.S. 225 (1972), held that 42 U.S.C. § 1983 is one such express congressional authorization, because § 1983's "very purpose" is to interpose federal courts between states and their citizens to protect against violations of federal rights. *Id.* at 242. RESPA's private right of action, 12 U.S.C. § 2605(f), and TILA's private right of action, 15 U.S.C. § 1640, are each Acts of Congress establishing federal causes of action against servicers for violations of federal law — they are, in the language of *Mitchum*, express authorizations that enable this federal court to act even against a state court proceeding when necessary to protect the federal statutory rights of the Grantor. This independent ground for jurisdiction was not addressed in the Court's Order.

Moreover, RESPA, 12 U.S.C. § 2601, is a federal statute enacted pursuant to Congress's constitutional commerce power and its power to regulate federally-related mortgage transactions. 12 U.S.C. § 2602(1). The Supremacy Clause, U.S. Const. Art. VI, cl. 2, makes RESPA the supreme law of the land. A state court judgment does not and cannot grant a servicer permission to violate RESPA. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819). The Court's Order did not address the *Mitchum* exception or the Supremacy Clause basis for jurisdiction.

## III. FRAUD IN THE INDUCEMENT IS THE FOUNDATIONAL BREACH — DEFENDANTS ARE TRUSTEES IN BREACH OF THE DUTIES OF LOYALTY, CARE, AND DISCLOSURE — FIVE ADDITIONAL BREACHES ESTABLISHED BY RECORD EVIDENCE — CLEAN HANDS DOCTRINE BARS ALL ENFORCEMENT

### *A. Fraud in the Inducement — The Foundational Breach That Invalidates Every Subsequent Act*

The table funding scheme through which this loan was originated concealed the identity of the actual investor — GNMA — from Plaintiff-Grantor at the time of execution. The identity of the true note owner and the nature of the table funding arrangement were required to be disclosed at origination under 15 U.S.C. § 1638 (TILA origination disclosures), Pub. L. 90-321, 82 Stat. 146. They were not. This is not a technical omission. It is fraud in the inducement: a material fact — who actually owned the beneficial interest in the loan — was suppressed at the moment of contracting, preventing informed consent. *Suppressio veri suggestio falsi.* The suppression of a material truth is the legal equivalent of an affirmative misrepresentation.

The materiality of this concealment is not theoretical. Plaintiff-Grantor submitted a counter offer to M&T; Bank — an offer that, had he known GNMA was the actual investor and backstop of the VA guarantee, he would have framed differently and to a materially greater extent. That counter offer was itself made under duress: it was conducted under the active threat of foreclosure, wielding a phantom denial M&T; Bank's own representative could not locate. A negotiation conducted under threat and without knowledge of the true counterparty's identity is not a product of informed consent and cannot bind the party who was deceived. *Fraud vitiates everything it touches.*

The fraud in the inducement also permanently disqualifies every downstream party from holder-in-due-course status under UCC § 3-302. A holder in due course must take an instrument for value, in good faith, and without notice of any claim or defense against it. The attorneys who delivered the note to U.S. Bank had actual knowledge that the note was no longer in Flagstar's possession at the time of delivery. That actual knowledge constitutes imputed notice to every subsequent taker in the chain — including Lakeview Loan Servicing, LLC. *Nemo dat quod non habet.* No party downstream of that defective delivery can satisfy the notice requirement of UCC § 3-302. The entire enforcement chain is permanently disqualified from holder-in-due-course protection, and every enforcement action premised on holder-in-due-course status is void.

The criminal dimension of the table funding scheme is stated for the record and preserved for the appropriate authorities. The fraudulent instruments transmitted through the mail and wire channels implicate 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). The scheme to defraud through the banking system implicates 18 U.S.C. § 1344 (bank fraud). The table funding fraud combined with serial TILA violations, the submission of void instruments to courts, and knowing fraudulent transfers constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961 *et seq.* (RICO). RESPA § 2607, Pub. L. 93-533, § 8,

proscribes kickbacks and unearned fees in connection with federally related mortgage loan transactions; undisclosed table funding fee arrangements fall squarely within its reach. These violations are stated as predicate facts for the full record; this Court need not adjudicate the criminal dimension to grant the civil equitable relief requested herein.

***B. The Trust Structure — Established from Defendants' Own Mouths***

On October 1, 2026, M&T; Bank representative Christopher D (ext. 8583) confirmed under direct questioning: (1) Lakeview Loan Servicing, LLC is the servicer; (2) GNMA is the actual investor. Exhibit AD, ¶¶ 8–12. GNMA mortgage-backed securities are structured as trust pools under 12 U.S.C. § 1717(a). The issuer-servicer holds pooled mortgage loans in a custodial/trust capacity for GNMA. Plaintiff-Grantor conveyed the lien interest that underlies the trust pool. The grantor of any trust instrument has an equitable right to demand that the trustee act within its authority. *Restatement (Third) of Trusts* § 75 (2007). These are facts of record. They are not attorney representations. *Trinsey*, 229 F. Supp. at 649.

***C. The Five Additional Breaches of Fiduciary Duty***

**Breach One — Dual-Tracking (12 C.F.R. § 1024.41(g)):** Christopher D confirmed on October 1, 2026 that M&T; Bank was offering loss mitigation while the foreclosure remained active — a confirmed, on-the-record RESPA dual-tracking violation. This is a breach of the trust-servicer's statutory duty to the grantor. Statutory anchor: Pub. L. 93-533, § 6, codified at 12 U.S.C. § 2605(b); 12 C.F.R. § 1024.41(g). Maxim: *No man shall profit from his own wrong.*

**Breach Two — Phantom Prior Denial (12 C.F.R. § 1024.41(d)):** The same representative could not locate the prior denial that Defendants have held over Plaintiff as the reason foreclosure must proceed. A servicer-trustee that presents a prior denial to justify enforcement and cannot find it in its own records has either fabricated the denial or lost the records proving it. Either constitutes breach of the duty of honest dealing. *Restatement (Third) of Trusts* § 82. Maxim: *Fraud vitiates everything it touches.*

**Breach Three — Ultra Vires Foreclosure Without GNMA Authorization:** Lakeview and M&T; Bank's authority to foreclose derives from GNMA's pooling and servicing arrangement and GNMA's written authorization. No written authorization from GNMA permitting foreclosure of 15 Sodom Road, Hyde Park, New York 12538 has ever been produced. An act taken in excess of trustee authority is ultra vires and void. *Nemo dat quod non habet.* Statutory anchor: 38 U.S.C. § 3703; 12 U.S.C. § 1717(a). Maxim: *That which is null and void from the beginning cannot be ratified by subsequent acts.*

**Breach Four — Serial Misidentification of Investor (15 U.S.C. § 1641(f)(2)):** Three confirmed post-FAC violations: Exhibit AD (October 1 call), QWR response (July 2026), and Exhibit Z (September 14, 2026 generic status letter). Each violation of § 1641(f)(2) is an independent actionable offense. See Question Two above. Statutory anchor: Pub. L. 90-321, § 131, codified at 15 U.S.C. § 1641(f)(2); 15 U.S.C. § 1640 (civil liability). The misrepresentation was presented to the state court as fact — constituting fraud on that court. Maxim: *Fraud vitiates everything it touches.*

**Breach Five — The Self-Negating Assignment Instrument — Void Ab Initio:** The assignment instrument upon which the entire chain of title in the Dutchess County foreclosure proceeding rests contains, on its face, language stating that the very security interest it purports to assign was **"NOT ASSIGNED."** This is a self-defeating instrument void ab initio. Under New York law, the note and mortgage must travel together. *HSBC Bank USA, N.A. v. Taher*, 104 A.D.3d 815, 817 (2d Dep't 2013); *Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 361 (2015). An assignment that states the security was "NOT ASSIGNED" breaks the chain of title. The assignee holds no security interest. *Nemo dat quod non habet.* A party with no security interest cannot foreclose. The void instrument was submitted to the state court as valid evidence of title — constituting fraud on the court under *Hazel-Atlas*, 322 U.S. at 246. Statutory anchor: CPLR § 5015(a)(3) (vacatur for fraud); N.Y. Real Prop. Law § 244. Maxims: *Fraud vitiates everything it touches; That which is null and void from the beginning cannot be ratified by subsequent acts.*

***D. Trustee Duties of Loyalty, Care, and Disclosure — Restatement (Third) of Trusts Analysis***

Defendants occupy trust positions recognized by the Restatement (Third) of Trusts. Lakeview Loan Servicing, LLC holds the pooled mortgage loans in a custodial/trust capacity for GNMA under 12 U.S.C. § 1717(a). Plaintiff-Grantor conveyed the lien interest that underlies the trust pool and is the grantor of the security instrument. The grantor of any trust instrument has equitable rights enforceable against the trustee. *Restatement (Third) of Trusts* § 75 (2007). Three core duties have been breached:

**Duty of Loyalty — *Restatement (Third) of Trusts* § 78:** The trustee must administer the trust solely in the interest of the beneficiaries. Breaches of this duty: (a) dual-tracking — simultaneously pursuing foreclosure while offering loss mitigation, using enforcement as leverage rather than acting in good faith toward resolution; (b) phantom denial — presenting a denial that M&T; Bank's own records do not contain, using a manufactured obstacle to foreclose on a veteran's home; (c) ultra vires foreclosure without GNMA's written

authorization — acting beyond delegated authority to serve the servicer's financial interests, not the trust's beneficiaries; and (d) originating non-disclosure — concealing GNMA's identity at origination through the table funding scheme, serving the originator's fee interests at the expense of the Grantor's informed consent.

**Duty of Care and Prudence — *Restatement (Third) of Trusts* § 77:** The trustee must exercise reasonable care and skill in administering the trust. Breach of this duty: submitting the self-negating assignment instrument — which states on its face that the security was "NOT ASSIGNED" — to the Dutchess County Supreme Court as valid evidence of title and standing. A prudent trustee exercising reasonable care does not submit to a court of law an instrument that defeats itself on its face. The submission of that instrument constitutes a breach of the duty of prudence and, under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), a fraud on the court.

**Duty of Disclosure — *Restatement (Third) of Trusts* § 82:** The trustee must keep the grantor reasonably informed of the administration of the trust and the material facts necessary to protect the grantor's interests. Breaches of this duty: (a) three confirmed violations of 15 U.S.C. § 1641(f)(2) by failing to identify GNMA as the actual owner of the loan in response to written requests — the Exhibit AD call (October 1, 2026), the QWR response (July 2026), and the generic status letter (September 14, 2026, Exhibit Z); and (b) concealment of GNMA's identity through the table funding scheme at origination, the foundational non-disclosure that precedes and infects every subsequent act. The duty of disclosure exists precisely to prevent the kind of multi-year deception that has been practiced here. Statutory anchor: Pub. L. 90-321, § 131, codified at 15 U.S.C. § 1641(f)(2); 15 U.S.C. § 1640 (civil liability for each violation).

### *E. Clean Hands Doctrine — Equity Will Not Aid These Defendants*

Defendants seek equity's permission to proceed with foreclosure. They come before this Court with: a self-negating assignment instrument; a phantom prior denial their own records do not contain; three confirmed TILA § 1641(f)(2) violations; active RESPA dual-tracking; and no GNMA written authorization. The maxim is absolute: *he who comes into equity must come with clean hands.* A trustee who procured a judgment by submitting a void, self-negating instrument to the state court cannot invoke that judgment as a shield in this Court. Equity does not permit a trustee in breach to use the product of its breach as a defense. *See Deweese v. Reinhard*, 165 U.S. 386, 390 (1897).

## IV. THE SELF-NEGATING ASSIGNMENT INSTRUMENT CONSTITUTES FRAUD ON THE COURT — THIS COURT'S INHERENT EQUITY POWER UNDER

**HAZEL-ATLAS IS NOT SUBJECT TO ROOKER-FELDMAN**

The Supreme Court in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), established that a federal court of equity possesses inherent power to address fraud on the court — including a fraud that induced the entry of a judgment — regardless of finality and regardless of which court was defrauded. "Tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* at 246. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (confirming inherent equity power to sanction fraud on the court, independent of any rule or statute).

The self-negating assignment instrument submitted to the Dutchess County Supreme Court as valid evidence of a chain of title constitutes extrinsic fraud on that court: the instrument was submitted as the foundation of standing to foreclose; it states on its face that the security was "NOT ASSIGNED"; the state court was not shown, or did not address, this self-defeating language; and a judgment of foreclosure was entered on its strength. A judgment obtained through presentation of an instrument void on its face is not entitled to the protections *Rooker-Feldman* affords to legitimately-entered judgments. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140–41 (9th Cir. 2004). The Second Circuit has not addressed this exception, and the absence of a Second Circuit ruling barring such claims cannot be construed as a ruling permitting the fraud to stand. This Court is bound by *Hazel-Atlas* as Supreme Court authority.

The compounding of frauds — the self-negating assignment, the investor misidentification (Lakeview substituted for GNMA), and the phantom prior denial confirmed missing from M&T;'s own records — demonstrates a pattern of conduct designed to use the judicial process as a vehicle for dispossessing the Grantor through instruments and representations that are false on their face or confirmed false by the trustees' own admissions. This is precisely the wrong against judicial institutions that the Supreme Court declared in *Hazel-Atlas* must never go unremedied.

**V. EX PARTE YOUNG AND IN PERSONAM EQUITY CONFIRM THIS COURT ACTS AGAINST THE TRUSTEE, NOT THE JUDGMENT — ROOKER-FELDMAN HAS NEVER REACHED IN PERSONAM EQUITY RELIEF**

The Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), established that equity acts *in personam* — against the person of the officer or fiduciary violating the law — not against the sovereign or the judgment. When this Court enjoins a servicer-trustee from conducting a foreclosure sale while that trustee is violating 12 C.F.R. § 1024.41(g), it is not reviewing the

state court judgment. It is restraining the trustee's person. The state court judgment does not authorize Defendants to violate RESPA in the course of enforcing it. Equity restrains the *conduct*, not the judgment. Those are legally and constitutionally distinct acts and this distinction, grounded in four centuries of chancery practice, was not addressed in the Court's Order.

**VI. THE SUPREMACY CLAUSE OF THE CONSTITUTION — ACTS OF CONGRESS GOVERNING SERVICER CONDUCT SUPERSEDE ANY STATE COURT JUDGMENT**

The Supremacy Clause, U.S. Const. Art. VI, cl. 2, makes federal statutory law the supreme law of the land, binding on all persons and superseding any conflicting state law or state court judgment. RESPA, Pub. L. 93-533, codified at 12 U.S.C. § 2601 *et seq.*, is a federal statute and the supreme law of the land. 12 C.F.R. § 1024.41(g) is a federal regulation with the force of law. A state court judgment does not and cannot override a federal servicer's statutory obligation under RESPA. The state court entered a judgment of foreclosure and sale; it did not grant Defendants permission to violate federal law in executing it. A federal court enforcing RESPA against a servicer in violation is not reviewing a state court judgment — it is doing what the Supremacy Clause requires. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819). *Rooker-Feldman* does not and cannot override the Supremacy Clause. This Court's Order did not address this.

**VII. THE DUE PROCESS CLAUSE AND PUB. L. 97-280 — THREE-FORUM PARALYSIS DENIES A MEANINGFUL REMEDY; CONGRESSIONAL RECOGNITION OF CHRISTIAN MORAL PRINCIPLES REQUIRES THIS COURT TO ACT**

The Fifth Amendment's Due Process Clause guarantees not merely a formal hearing but a *meaningful* one before deprivation of property. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The three-forum paralysis here — the Appellate Division sitting on a stay motion for 77+ days without ruling; the state trial court deferring to the Appellate Division; and this Court declining on *Rooker-Feldman* — has produced a situation in which Plaintiff, a 100% service-disabled veteran, has had no effective judicial protection for over two and a half months while trustees who cannot locate their own prior denial, confirmed dual-tracking violations on the record, and have never produced written authorization from GNMA stand poised to execute a sale. Under *Mathews*, all three factors — private interest, risk of erroneous deprivation, and governmental interest — weigh decisively in favor of intervention.

Congress, in Pub. L. 97-280, 96 Stat. 1211 (Oct. 4, 1982), formally recognized the Bible as the Word of God and declared that the role of Christian moral principles in the foundation of American law and government is expressly acknowledged. That congressional recognition is an Act of Congress, duly enacted, binding as part of the public law. It is the operative vehicle through which the moral foundation of equity — the protection of the household, the family, and the homestead against fraudulent deprivation — is anchored in positive law.

The protection of a man's homestead from fraudulent dispossession reflects the biblical and natural law principles that Congress formally recognized in Pub. L. 97-280: "A man's home is his castle" is both a common law maxim and a principle rooted in the natural law tradition that Congress has acknowledged as foundational to American jurisprudence. The fraudulent deprivation of a 100% service-disabled veteran's home — through a self-negating instrument, phantom denial, and serial TILA violations — implicates the moral foundation that Congress recognized. The conscience of this Court is invoked where Defendants have violated both positive law (RESPA, TILA, VA guarantee) and the moral principles Congress formally recognized. Equity has always been the court of conscience. *Sprague*, 307 U.S. at 164–65.

## VIII. 38 U.S.C. § 3703 AND PUB. L. 119-31 — THE VA GUARANTEE IMPOSES AN INDEPENDENT FEDERAL TRUST OBLIGATION OWED DIRECTLY TO THE VETERAN-GRANTOR; SERVICER HAS NO ARTICLE III STANDING TO FORECLOSE ABSENT GNMA WRITTEN AUTHORIZATION

Plaintiff's mortgage loan is VA-guaranteed under 38 U.S.C. § 3703 and the Sergeant First Class Heath Robinson Honoring our Promise to Address Comprehensive Toxics Act, Pub. L. 119-31. The VA guarantee creates a specific federal trust obligation: the United States Government stands as the ultimate guarantor, and the servicer's authority to foreclose is conditioned on compliance with VA servicing requirements codified at 38 C.F.R. § 36.4350 *et seq.* — including mandatory loss mitigation, forbearance, and home-retention options that must be exhausted. Defendants have not demonstrated compliance with any of these conditions. More fundamentally: where GNMA is the confirmed actual investor, as established by Christopher D's October 1, 2026 admission, GNMA — not Lakeview, not M&T; Bank — is the party with the beneficial interest in the loan. *Nemo dat quod non habet.* A servicer without the beneficial interest, and without written authorization from the party holding it, lacks Article III standing to foreclose. This is a constitutional threshold question. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

**IX. RENEWED APPLICATION FOR TRO IN EQUITY — EBAY/SALINGER/CITIGROUP FOUR-FACTOR STANDARD — ALL FOUR FACTORS MET — RULE 3 COMPLIANCE: ALL ESCAPE ROUTES CLOSED**

Plaintiff renews the TRO application in equity, invoking Article III equity jurisdiction over the persons of the trustees in breach. The relief sought is an injunction in equity restraining Defendants M&T; Bank Corporation, Lakeview Loan Servicing LLC, Roach & Lin P.C., and their agents, employees, attorneys, and successors in interest, *in personam*, from: (i) scheduling, noticing, or conducting any foreclosure sale of 15 Sodom Road, Hyde Park, New York 12538, while Defendants are in active breach of 12 C.F.R. § 1024.41(g); (ii) proceeding with any enforcement action without producing written authorization from GNMA, the confirmed actual investor, authorizing this specific foreclosure; and (iii) relying on any prior denial Defendants cannot locate in their own records and for which no written § 1024.41(d) determination has been produced.

The four-factor standard under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010); and *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) is fully satisfied:

(1) **Likelihood of success on the merits:** Established by record evidence, not by attorney argument. Christopher D confirmed on the record: RESPA dual-tracking (§ 1024.41(g) violation); GNMA as actual investor without authorization produced (ultra vires foreclosure); prior denial missing from records (§ 1024.41(d) violation). The self-negating assignment stating "NOT ASSIGNED" is a documentary fact. Three TILA § 1641(f)(2) violations are documentary facts. These are facts in evidence, not attorney representations. *Trinsey*, 229 F. Supp. at 649. The merits are established from the trustees' own mouths and their own instruments.

(2) **Irreparable harm:** Permanent, uncompensable loss of the primary residence of a 100% service-disabled veteran. Money damages cannot restore a home once sold at foreclosure sale. This is the paradigm case for irreparable harm. No adequate remedy at law exists. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

(3) **Balance of equities:** Decisively favors Plaintiff. Defendants face only delay in a financial enforcement action — compensable if they ultimately prevail. Plaintiff faces permanent dispossession. Defendants' own admissions demonstrate active federal law violations. Equity will not balance equities in favor of a trustee in breach with unclean hands. The maxim

commands: *No man shall profit from his own wrong.* Under Pub. L. 97-280, the moral weight of this balance is also on Plaintiff's side: the protection of a service-disabled veteran's homestead against fraudulent dispossession reflects the moral principles Congress formally recognized.

(4) **Public interest:** Enforcing RESPA, Pub. L. 93-533, codified at 12 U.S.C. § 2601; enforcing TILA, Pub. L. 90-321, codified at 15 U.S.C. § 1641; protecting VA-guaranteed loan programs under 38 U.S.C. § 3703 and Pub. L. 119-31; ensuring that trustees do not use state court judgments to circumvent Acts of Congress; and preserving the integrity of GNMA's mortgage-backed securities program under 12 U.S.C. § 1717(a) — each of these serves the public interest directly. Additionally, the public interest in ensuring that courts of equity are not made instruments of fraud on the court, as established by *Hazel-Atlas*, 322 U.S. at 246, weighs heavily in favor of granting this relief. The public interest factor is independently met on each of these grounds, any one of which is sufficient.

**Rule 3 Compliance — All Escape Routes Closed:** This Court cannot deny this renewed application on any single ground and eliminate all relief. The legal framework is constructed so that each independent theory stands on its own: (a) Article III equity jurisdiction over trustees in breach — independent of *Rooker-Feldman*; (b) *Hazel-Atlas* inherent equity power over fraud on the court — independent of statute; (c) *Mitchum* exception to Anti-Injunction Act — RESPA and TILA as express congressional authorizations; (d) Supremacy Clause — Acts of Congress supersede state court judgment authority to permit RESPA violations; (e) Article III standing defect — servicer without GNMA authorization has no standing to foreclose. Each theory independently requires the Court to act. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), are satisfied on each independent claim by record evidence, not by mere conclusory allegations — by Christopher D's admissions, by the self-negating instrument on its face, and by Defendants' own documentary failures.

**CONCLUSION**

The Court's October 1, 2026 Order applied *Rooker-Feldman* in a commercial litigation framework without addressing six dispositive independent grounds: (1) Article III equity jurisdiction over trustees in personam — which *Rooker-Feldman* has never reached and constitutionally cannot reach; (2) the *Mitchum* exception authorizing injunctive relief under RESPA and TILA as Acts of Congress expressly empowering federal courts; (3) the self-negating assignment instrument — stating on its face that the security was "NOT

ASSIGNED" — triggering this Court's inherent *Hazel-Atlas* equity power; (4) the October 1, 2026 M&T; Bank admissions establishing post-commencement RESPA violations outside *Rooker-Feldman*'s temporal scope; (5) the Supremacy Clause requiring enforcement of Acts of Congress regardless of state court judgment; and (6) the servicer's lack of Article III standing absent GNMA written authorization. Each of these grounds independently warrants reconsideration and independently supports the renewed TRO. Foundational to all of the foregoing is the fraud in the inducement at origination: the table funding scheme that concealed GNMA as the actual investor, in violation of 15 U.S.C. § 1638, permanently disqualified every downstream party from holder-in-due-course status under UCC § 3-302 and invalidated every subsequent enforcement act by operation of the maxim — *fraud vitiates everything it touches.* Under the eight governing maxims of equity stated herein (including *suppressio veri suggestio falsi*), under Pub. L. 97-280's recognition of the moral principles underlying this Court's equity jurisdiction, and under every binding organic authority identified in the Questions Presented above, this Court is respectfully required by law to grant this relief.

Plaintiff-Grantor respectfully requests that this Court: (1) reconsider ECF No. 24; (2) hold that Article III equity jurisdiction over trustees in breach of fiduciary duty, the *Hazel-Atlas* inherent equity power, the *Mitchum* exception, and the Supremacy Clause each independently establish this Court's jurisdiction to act; (3) grant the renewed TRO in equity enjoining Defendants-Trustees *in personam* from scheduling or conducting any foreclosure sale while: (a) in active RESPA dual-tracking violation; (b) without written authorization from GNMA, the confirmed actual investor; and (c) relying upon a self-negating assignment instrument that states on its face that the security interest was "NOT ASSIGNED"; and (4) in the alternative, schedule an immediate expedited hearing on the renewed application, with Defendants required to appear and answer — under oath, with authenticated documentary evidence, and not through mere attorney argument — the foundational questions of organic law presented in this Memorandum. A right without a remedy is no right at all. This Court is the last forum with power to act.

Respectfully submitted,

Andre-Nigel Barnett, *self-governed (coming without BAR attorney)*
15 Sodom Road, Hyde Park, New York 12538
Tel: (845) 251-2098 | Email: trustees@anb-trust.com

Dated: October 2, 2026
White Plains, New York